IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PAMELA LEWIS, et al.          :          CIVIL ACTION
                              :
          v.                  :
                              :
LYCOMING, et al.              :          NO. 11-6475


MEMORANDUM

Bartle, J.                                January 10, 2013

        Before the court is the joint motion of defendants Avco
Corporation, Lycoming Engines, Textron Systems Corporation,
Textron, Inc., Precision Airmotive LLC, Precision Airmotive
Corporation, Schweizer Aircraft Corporation, Schweizer Holdings,
Inc., Sikorsky Aircraft Corporation, United Technologies
Corporation, and Champion Aerospace LLC (collectively
"defendants") to dismiss this diversity action on the ground of
forum non conveniens.

                              I.

        The plaintiffs are Pamela Lewis, individually and as
personal representative of the estate of Steven Edward Lewis,
deceased, and Keith Whitehead and John Wroblewski as co-personal
representatives of the estate of Philip Charles Gray, deceased.
The decedents, British subjects and residents of the United
Kingdom, were killed in a helicopter crash on September 22, 2009
near Blackpool in Lancashire, England.  At the time, Steven
Edward Lewis was a certified helicopter pilot who was training
Philip Charles Gray for his private pilot license.  All of the

defendants allegedly played some role in either the design, manufacture, assembly or sale in the United States of the helicopter or its parts.[1]  Subsequent to the crash, the wreckage of the helicopter was transported from England to the state of Delaware where it remains in storage.  The complaint contains claims for damages on theories of product liability, negligence, breach of warranty, and concert of action.

The lawsuit was originally commenced in the Court of Common Pleas of Philadelphia County.  Defendants removed it to this court, which thereafter denied the motion of the plaintiffs to remand.  See Lewis v. Lycoming, No. 11-6475, 2012 U.S. Dist. LEXIS 88905 (E.D. Pa. June 27, 2012).  Having succeeded in defeating plaintiffs' motion, defendants have now moved to dismiss on the ground of forum non conveniens.

The doctrine of forum non conveniens allows a court discretion within certain bounds to decline to exercise its subject matter jurisdiction because of inconvenience to the parties or witnesses even though venue may otherwise be proper. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947).  The defendants bear the burden of proof.  See Windt v. Qwest Commc'ns Int'l, Inc. 529 F.3d 183, 192 (3d Cir. 2008).

Defendants must first persuade the court that "an adequate alternative forum exists as to all defendants."  Lacey v. Cessna Aircraft Co., 932 F.2d 170, 180 (3d Cir. 1991).   If

---

1.  Some defendants are alleged to be alter egos of other defendants.

there is such a forum, the court must determine the level of deference due to the plaintiffs' choice.  The level of deference is not as high as would occur when the plaintiff is a resident or citizen of the United States.  Nonetheless, a court should "not lightly disturb plaintiff's choice of forum and will hold defendants to establishing a strong preponderance in favor of dismissal."  Lacey, 932 F.2d at 179 (citations omitted).

Finally, defendants must establish that "the private and public interest factors weigh heavily in favor of dismissal." Lony v. E.I. Du Pont de Nemours & Co., 935 F.2d 604, 609 (3d Cir. 1991) ("Lony II") (citations omitted).  To prevail, defendants "must show that the balance of these factors tips decidedly in favor of a trial in a foreign forum."  Windt, 529 F.3d at 192 (citations omitted).  As the Court of Appeals stated in Windt, "If the balance of these factors indicates that trial in the chosen forum would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience, the district court, may, in its discretion, dismiss the case on forum non conveniens grounds."  Windt, 529 F.3d at 190.

Our Court of Appeals in Windt has reiterated the public and private interests the court must consider.  The private interests include:

> the relative ease of access to sources of
> proof; availability of compulsory process for
> attendance of unwilling, and the cost of
> obtaining attendance of willing, witnesses;
> possibility of view of premises, if view
> would be appropriate to the action; and all

> other practical problems that make trial of a
> case easy, expeditious and inexpensive.
>
> The public interests include:
>
> administrative difficulties flowing from
> court congestion; the "local interest in
> having localized controversies decided at
> home"; the interest in "having the trial of a
> diversity case in a forum that is at home
> with the state law that must govern the
> case"; the avoidance of unnecessary problems
> in conflict of laws, or in the application of
> foreign law; and the unfairness of burdening
> citizens in an unrelated forum with jury
> duty.

Id. at 189 (citing Gulf Oil, 330 U.S. at 508-09).

The action, of course, is in its very early stages. While answers have been filed, no discovery has yet occurred on the merits. Because it is difficult at such an early stage to discern what the ultimate focus of any lawsuit will be, our Court of Appeals has explained that in deciding a forum non conveniens motion "the district court must do no more than delineate the likely contours of the case by ascertaining, among other things, the nature of the plaintiff's action, the existence of any potential defenses, and the essential sources of proof." Lacey, 932 F.2d at 181.

II.

We first turn to the question of whether the defendants have established that "an adequate alternative forum exists as to all defendants" in the United Kingdom. Id. at 180. Even if the law there is less favorable to plaintiffs, that factor is not in and of itself a reason to deny a forum non conveniens motion.

-4-

The nature of the law in the alternative forum may be given "substantial weight" against a dismissal only where it "is so clearly inadequate or unsatisfactory that it is no remedy at all."  <u>Piper Aircraft v. Reyno</u>, 454 U.S. 235, 250-54 (1981).

The plaintiffs contend that in this instance there is no adequate alternative forum because defendants Precision Airmotive LLC and Precision Airmotive Corporation (together, the "Precision Defendants") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on December 7, 2012.  The Precision Defendants' bankruptcy filing automatically stays the instant litigation against the Precision Defendants and enjoins any future claims against the Precision Defendants arising out of this crash.  <u>See</u> 11 U.S.C. § 362(a). Accordingly, the plaintiffs could not bring any suit against the Precision Defendants in the United Kingdom or anywhere else while its bankruptcy proceeding is pending unless they request relief from the automatic stay.  Further, this court may not dismiss the action against the Precision Defendants until the stay is lifted because a dismissal would constitute a continuation of the action under 11 U.S.C. § 362(a).  <u>See</u> <u>Pope v. Manville Forest Products Corp.</u>, 778 F.2d 238, 239 (5th Cir. 1985).

A party may obtain relief from the automatic stay "for cause."  11 U.S.C. § 362(d)(1).  This portion of the statute specifically provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under

-5-

> subsection (a) of this section, such as by
> terminating, annulling, modifying, or
> conditioning such stay--
> (1) for cause, including the lack of adequate
> protection of an interest in property of such party in
> interest; ....

See 11 U.S.C. § 362(d)(1).  We do not know whether the plaintiffs have filed for relief from the automatic stay or whether they are planning to do so.  Unless the stay is lifted, any action against the Precision Defendants cannot go forward either in this district or in the United Kingdom.  Accordingly, the bankruptcy does not affect our decision on the pending motion.

The automatic stay applies only to the Precision Defendants and not the other defendants.  If we find that continuing this action in the Eastern District of Pennsylvania would be inconvenient to the parties or witnesses, we may dismiss it as to the other defendants.  Clearly, an adequate alternative forum in the United Kingdom exists for all the other defendants and for the Precision Defendants if the stay is lifted.

We must next determine the level of deference to afford the plaintiffs' choice of forum.  "In Piper, the Supreme Court remarked that although 'there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, ... that ... presumption applies with less force when the plaintiff or real parties in interest are foreign.'"  Lacey, 932 F.2d at 178 (quoting Piper, 454 U.S. at 255).  Our Court of Appeals has noted that "the reason for giving a foreign plaintiff's choice less deference is not xenophobia, but merely a reluctance to assume

that the choice is a convenient one." <u>Lony v. E. I. Du Pont de
Nemours & Co.</u>, 886 F.2d 628, 634 (3d Cir. 1989) ("Lony I").  This
reluctance "can readily be overcome by a strong showing of
convenience." <u>Id.</u>  Here, the plaintiffs argue that Pennsylvania
is a convenient forum because Lycoming Engines ("Lycoming"),
which designed and manufactured the engine, is located in
Pennsylvania (albeit in the Middle District), and Schweizer's
headquarters is in Pennsylvania.  Moreover, all defendants are
located in the United States.  This demonstrates at least some
convenience.  As in <u>Lacey</u>, "we will not lightly disturb
plaintiff's choice of forum and will hold defendants to
establishing a strong preponderance in favor of dismissal."
<u>Lacey</u>, 932 F.2d at 179 (citations omitted).

III.

We will now address whether "the moving defendants
[have] show[n] that ... the private and public interest factors
weigh heavily on the side of dismissal." <u>Lony II</u>, 935 F.2d at
609 (citations omitted).  The first factor is the "relative ease
of access to sources of proof." <u>Windt</u>, 529 F.3d at 189 (citing
<u>Gulf Oil</u>, 330 U.S. at 508).  Significantly, the wreckage from the
helicopter crash is now located in the United States,
specifically in the nearby state of Delaware.  The defendants
contend that the location of the wreckage does not weigh in favor
of the plaintiffs since it was plaintiffs' counsel who shipped
the wreckage to the United States from the United Kingdom.  The
defendants aver that plaintiffs' counsel may have done so in

-7-

anticipation of the pending forum non-conveniens motion.
Plaintiffs' counsel came into possession and ownership of the
wreckage in October 2011.  Plaintiffs' counsel maintain that they
moved the wreckage to the United States to facilitate more
convenient inspection and testing by the parties in this
litigation.  The defendants have not proven otherwise.  In any
event, the wreckage is in Delaware.  Moving it back across the
Atlantic would be costly and inconvenient.

        In addition, the records relating to design and
manufacture of defendants' products and any testing of those
products are located in the United States.  Specifically, the
helicopter, a Schweizer 269C, was manufactured in 2006 by
Schweizer Aircraft Corporation in New York.  Schweizer has since
moved the manufacture of these types of helicopters to its
facility in Coatesville, Pennsylvania, in this judicial district,
and witnesses and documents related to its design and manufacture
are located within the Commonwealth.  In addition, the
helicopter's engine, an HIO-360-G1A engine, was designed and
manufactured by Lycoming in Williamsport, Pennsylvania.  The
engine featured magnetos sold under the "Slick" brand name which
are currently designed and manufactured by Champion Aerospace LLC
in South Carolina.  The helicopter also incorporated a fuel
injector servo designed and manufactured by the Precision
Defendants, which are situated in the state of Washington.  The
defendants have agreed that if the litigation proceeds in the
United Kingdom, they would produce there any witnesses and

-8-

documents related to the design, manufacture, assembly, and testing of these products which occurred in the United States. Doing so, of course, would be much more costly and less convenient than producing them in Philadelphia.

The defendants argue that more evidence related to this litigation is located in the United Kingdom than in the United States.  Specifically, the pilots' training occurred in the United Kingdom, any maintenance records are in the United Kingdom, any witnesses of the crash or of the helicopter's flight prior to the crash are in the United Kingdom, and other possible witnesses, such as mechanics, passengers and pilots on the helicopter's prior flights, family members, flight instructors, first responders, and the accident's investigators, are in the United Kingdom.  This evidence would be relevant to any defenses based on the pilot's negligence or negligent maintenance.

Plaintiffs dispute the relevance of this evidence.  In particular, they contend that maintenance records are irrelevant because their theory of liability rests upon claims of a defective helicopter component.  As for possible eyewitnesses of the crash, plaintiffs note that no witness saw the actual crash and that no such witness would be able to aid any factfinder in determining the cause of the crash.

We cannot decide, of course, at this early juncture what the theories of liability and defenses will be at trial or what evidence will be most relevant to those claims and defenses. Nonetheless, the likely contours of this action will involve

witnesses and documents regarding the design, manufacture, assembly, and testing of the aircraft and its parts.  The wreckage itself will surely be significant evidence, as well as the testimony of experts who will examine the wreckage and opine on the cause of the crash.  Such testimony, we anticipate, will be at the heart of the case.  The defendants have not established that witnesses and documents located in the United Kingdom outweigh the importance of the witnesses, documents and other evidence present here in the United States.  This factor weighs in favor of the plaintiffs.

The next private interest factor is "the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses."  Windt, 529 F.3d at 189 (citing Gulf Oil, 330 U.S. at 508).  As noted above, the defendants have agreed to produce witnesses and documents under their control for any proceeding in the United Kingdom.  However, the plaintiffs contend that key witnesses are located in the United States who are not under the defendants' control.  These witnesses are the former owners of the "Slick" brand magnetos which were allegedly part of the helicopter.  Although "Slick" brand magnetos are now designed and manufactured by Champion Aerospace LLC ("Champion"), Champion's parent company, TransDigm Inc., purchased the product line from Unison Industries, LLC ("Unison") in September 2008, after the date of manufacture of the helicopter, which was in 2006.  Accordingly, Unison appears to have designed and manufactured the magnetos at issue.  Unison

is a Delaware corporation, its electrical systems are manufactured in Jacksonville, Florida, and its power systems are manufactured in Norwich, New York.  It also has a facility in Wilkes-Barre, Pennsylvania.  Unison is not a party to this action, and the relevant documents and witnesses would be beyond the power of the English courts to compel production and testimony without letters rogatory.  See 28 U.S.C. § 1782.  This would be costly and complicated for the plaintiffs.

The defendants also contend that they may need to call non-party factual witnesses from the United Kingdom for any proceeding in the United States.  This process would likewise be costly and complicated.  These witnesses would be, as discussed above, witnesses to the crash, witnesses to the helicopter's flight prior to the crash, mechanics, passengers and pilots on the helicopter's prior flights, family members, flight instructors, first responders, and the accident's investigators. Although we understand the difficulty in obtaining the testimony of these fact witnesses, at best this factor balances equally for the plaintiffs and defendants, particularly since it appears that expert testimony will be what turns out to be crucial.  Thus, the defendants have not met their burden of proof with respect to this factor.

The third private interest factor is "the possibility of view of premises, if view would be appropriate to the action." Windt, 529 F.3d at 189 (citing Gulf Oil, 330 U.S. at 508).  This factor does not seem to favor the defendants even though the

accident site is situated near Blackpool in Lancashire.  The
accident site may be shown to the factfinder through pictures and
video.  There is no reason that any factfinder would need to
visit the site itself.  All wreckage has been cleared from it,
and no party contends that a view of the scene will tell the
factfinder anything about the cause of the accident, any defect
in the aircraft or its parts, or about the amount of damages
which may be owed to the plaintiffs.  This factor will be given
minimal consideration.

The last factor in the private interest analysis is
"all other practical problems that make trial of a case easy,
expeditious and inexpensive." Windt, 529 F.3d at 189 (citing
Gulf Oil, 330 U.S. at 508).  The defendants contend that trial in
this court would prevent them from impleading other potentially
responsible third-party tortfeasors located outside of this
court's personal jurisdiction, for example, those who performed
the maintenance on the aircraft, the companies that trained the
pilots, or the pilots themselves.  "[P]roblems posed by the
inability to implead potential third-party defendants clearly
support[s]" dismissing an action on the ground of forum non
conveniens.  Piper, 454 U.S. at 259 (1981).  In Piper, the
Supreme Court explained that even though defendants found liable
after a trial in the United States could institute an action for
indemnity or contribution against third parties in another forum,
it would be "far more convenient, however, to resolve all claims
in one trial." Id.

The plaintiffs and defendants disagree on whether it would be possible to implead the third parties in an action in the United Kingdom.  The plaintiffs and defendants have submitted respective affidavits from individuals knowledgeable in English law to explain this issue to the court.  The plaintiffs argue that under English law, a claim for contribution requires any person or entity that is liable to a claimant to show that a third party is also liable to claimant for the same damages. Plaintiffs contend that third parties in the United Kingdom would claim that the defendants cannot seek contribution for damages from them since the statute of limitations has run in any action plaintiffs might now institute against defendants in the United Kingdom.  While defendants have agreed to waive the statute of limitations for any action filed in an English court, any third parties would argue that they cannot be held liable to defendants since the latter, having waived the statute of limitations, are mere volunteers in paying any damages to plaintiffs.

The defendants do not dispute this analysis of English law.  They simply argue that the applicable statute of limitations has not expired.  The plaintiffs state that the statute of limitations is three years from the date of death, which was September 22, 2009.  In contrast, the defendants maintain:

> Claims in negligence for personal injuries
> involving a fatality must generally be
> brought within 3 years from the later of (i)
> the date of death or (ii) the date of
> knowledge of the deceased's personal

representative - s.11(5) Limitation Act 1980.
The latter date refers to the date on which
the personal representative knew or ought
reasonably to have known (a) that the injury
in question was significant; (b) that the
injury was attributable in whole or in part
to the act or omission which is alleged to
constitute negligence; and (c) the identity
of the defendant - s.14 Limitation Act 1980.

The defendants contend that the "the date of knowledge of the deceased's personal representative" in this instance occurred when the United Kingdom's Air Accident Investigation Branch (AAIB) published the results of the investigation of the crash in December 2010, in which case the three-year limitation period for claims against the defendants would not expire until December 2013.  We are convinced by the defendants' analysis.  It follows that trial in the Eastern District of Pennsylvania would burden the defendants because they would not be able to implead English third-party defendants here but would be able to do so if the action were filed in the United Kingdom.  Assuming that defendants have bona fide claims for indemnity or contribution, this factor weighs in favor of the defendants.

The first public interest factor to consider is the "administrative difficulties flowing from court congestion." Windt, 529 F.3d at 189 (citing Gulf Oil, 330 U.S. at 508).  The defendants note that "[t]he latest published Judicial Caseload Profile discloses that the Eastern District of Pennsylvania has more pending cases than any other district court in the United States."  In this district each judge has his or her own individual docket, and thus the overall caseload of the district

does not necessarily inform a litigant on how expeditiously the assigned judge will hear a case.  There will be no undue delay if this action remains before the undersigned.  We do not give any weight to this factor.

The next public interest factor is the "local interest in having localized controversies decided at home." Id.  The United Kingdom has various interests in this controversy.  Initially, it has a strong interest in protecting its people from unsafe products and from negligent conduct.  In addition, the accident occurred in the United Kingdom's airspace, all decedents were British subjects, and the helicopter was owned since 2006 by a company located in the United Kingdom.  The accident was initially investigated by the AAIB and also by the Preston Coroner's Court in Lancashire, England.  The pilots were trained in the United Kingdom, and the aircraft was maintained there.

The United States likewise has an interest in this controversy.  All the defendants are located within the United States, and the aircraft and all its relevant parts were designed and manufactured here.  The United States has an interest in ensuring that its corporations do not engage in tortious conduct which causes injury to anyone, regardless of where those individuals reside.

The Supreme Court in Piper faced a similar factual scenario.  The facts there involved an aircraft accident which occurred in Scottish airspace, and all the decedents resided in Scotland.  In addition, unlike here, there was a separate action

-15-

pending in the United Kingdom against Scottish and English defendants.  The Court found that Scotland's interest in the litigation was "very strong."  Piper, 454 U.S. at 260. Plaintiffs argued, similarly to the argument here, that "American citizens have an interest in ensuring that American manufacturers are deterred from producing defective products, and that additional deterrence might be obtained if [the defendants] were tried in the United States, where they could be sued on the basis of both negligence and strict liability."  Id.  The Court concluded that "[t]he American interest in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here."  Id. at 261.

In light of the analysis in Piper, this factor weighs in favor of the defendants although not so heavily as in Piper. There, a separate action was pending in the United Kingdom against United Kingdom defendants.  Here, the plaintiffs have not sued any United Kingdom defendants.  As noted previously, plaintiffs have brought this action against eleven defendants which are all located in the United States.  While the United Kingdom undeniably has an interest in this controversy, the United States also clearly has an interest when eleven of its corporations are sued for product liability and negligence claims arising out of the crash of a helicopter which, together with its component parts, was designed and manufactured here.

-16-

The next public interest factors are connected:  the interest in "having the trial of a diversity case in a forum that is at home with the state law that must govern the case" and "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law." Windt, 529 F.3d at 189 (citing Gulf Oil, 330 U.S. at 508).  Some choice of laws analysis is necessary.

In diversity actions, courts look to the choice of law rules of the forum state, in this case Pennsylvania, to determine which state's substantive law to apply.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (U.S. 1941).  Pennsylvania follows "a flexible rule which permits analysis of the policies and interests underlying the particular issue before the court and directs courts to apply the law of the state with the most interest in the problem." Specialty Surfaces Int'l v. Cont'l Cas. Co., 609 F.3d 223, 237 (3d Cir. 2010) (citations omitted).

The initial step in our analysis requires us to focus on whether there is a "true conflict between the relevant laws" of Pennsylvania and the United Kingdom.  Id.  A true conflict exists and "[a] deeper [choice of law] analysis is necessary only if both jurisdictions' interests would be impaired by the application of the other's laws (i.e., there is a true conflict)." Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007) (internal quotations and citations omitted).  When this occurs, the court applies the "law of the state having the most significant contacts or relationships with the particular

-17-

issue."  <u>Garcia v. Plaza Oldsmobile Ltd.</u>, 421 F.3d 216, 220 (3d
Cir. 2005) (citation omitted).  On the other hand, a false
conflict exists when only one jurisdiction's interests would be
impaired by the other's laws.  <u>Lacey</u>, 932 F.2d at 187.  If there
is a false conflict, the court should apply the law of the only
interested jurisdiction.  <u>Id.</u>

       The defendants do not address whether the conflict here
is false or true, but the plaintiffs urge us to find that it is
false in that only Pennsylvania's interests would be impaired by
the application of the United Kingdom's law.  Pennsylvania's
interest in this matter is to deter manufacturers from placing
defective products into the stream of commerce and avoiding
responsibility for damages caused by the defect, as well as to
"shift some of the burden of injuries from consumers onto
producers and to induce manufacturers to be more careful."
<u>Lacey</u>, 932 F.2d at 188.  The United Kingdom's interest, according
to both parties, is protecting its citizens from unsafe products
and providing "full and fair compensation to the families of its
citizens who were killed."

       At this stage of the litigation, we do not know what
the applicable laws would be and whether there would be any
conflict at all, let alone a false or true conflict.  As in
<u>Lacey</u>, however, at this early stage it seems likely that a false
conflict exists because applying Pennsylvania's law would further
Pennsylvania's interests without harming the United Kingdom's.
932 F.2d at 188.  On the other hand, applying the United

-18-

Kingdom's law may harm Pennsylvania's interest because lower damages in the United Kingdom may not provide the same level of deterrence.  Accordingly, there likely is a false conflict.  In any event, the defendants have not established by a "strong preponderance" that this court would need to apply the laws of the United Kingdom at trial, and in fact did not address whether the conflict here is true or false.  This factor weighs in favor of the plaintiffs.

The last public interest factor is "the unfairness of burdening citizens in an unrelated forum with jury duty." Pennsylvania is not unrelated to this litigation.  The engine was designed and manufactured in the Commonwealth, and other defendants have offices and facilities here.  It would not be unfair or a burden for citizens of Pennsylvania to serve on a jury in this case.

IV.

In sum, an adequate alternative forum exists.  While plaintiffs' choice of forum is entitled to less weight since they are foreigners, they have chosen a convenient forum that should not be "lightly disturbed."  Lacey, 932 F.2d at 179 (citations omitted).

In addition, the "relative ease of access to sources of proof" weighs heavily in favor of the plaintiffs, particularly because the aircraft wreckage from the crash is housed in the United States where the experts will examine it.  The "availability of compulsory process for attendance of unwilling,

-19-

and the cost of obtaining attendance of willing, witnesses" is
neutral because in either venue it may be costly and inconvenient
to have access to some witnesses for trial.  The "possibility of
view of premises, if view would be appropriate to the action" is
not a factor since videos and pictures of the site would be
equally helpful to the factfinder in this instance.  As for "all
other practical problems that make trial of a case easy,
expeditious and inexpensive," the inability for the defendants to
implead potential English third-party defendants weighs in favor
of the defendants.

> We give no weight to the factor of "administrative
difficulties flowing from court congestion."  The "local interest
in having localized controversies decided at home" weighs
slightly in favor of the defendants.  The interests in "having
the trial of a diversity case in a forum that is at home with the
state law that must govern the case" and "the avoidance of
unnecessary problems in conflict of laws, or in the application
of foreign law" tip in favor of the plaintiffs.  The "unfairness
of burdening citizens in an unrelated forum with jury duty" also
weighs in favor of the plaintiffs.

> Having reviewed the various factors, defendants have
failed to meet their heavy burden to establish that the "balance
of these [private and public interest] factors tips decidedly in
favor of a trial in a foreign forum."  Windt, 529 F.3d at 192
(citations omitted); see also Lony II, 935 F.2d at 609.

Accordingly, we will deny the motion of the defendants to dismiss this action on the ground of forum non conveniens.  We will enter the order as to all the defendants except the Precision Defendants.  As to the latter, we will simply hold our decision in abeyance because of the automatic stay.