IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PAMELA LEWIS, et al.              :        CIVIL ACTION
                                  :
        v.                        :
                                  :
LYCOMING, et al.                  :        NO. 11-6475


MEMORANDUM

Bartle, J.                                        July 17, 2013

        The plaintiffs in this action are Pamela Lewis,
individually and as personal representative of the estate of
Steven Edward Lewis, deceased, and Keith Whitehead and John
Wroblewski as co-personal representatives of the estate of Philip
Charles Gray, deceased.  The decedents, British subjects and
residents of the United Kingdom, were killed in a helicopter
crash on September 22, 2009 near Blackpool in Lancashire,
England.  The defendants allegedly played some role in either the
design, manufacture, assembly or sale in the United States of the
helicopter or its parts.[1]  The plaintiffs claim that the crash
was caused when a defective fuel servo failed to provide proper
fuel supply to the engine.  The complaint contains claims for
damages on state-law theories of product liability, negligence,
breach of warranty, and "concert of action."

_____

1.  Some defendants are alleged to be alter egos of other
defendants.

Before the court is the motion of defendants Schweizer Aircraft Corporation, Schweizer Holdings, Inc., Sikorsky Aircraft Corporation, and United Technologies Corporation for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure[2] on the ground of federal preemption of state law as a result of the Federal Aviation Act of 1958, 49 U.S.C. § 40101 et seq. and its regulations, 14 C.F.R. § 1.1 et seq. Defendants Avco Corporation, Lycoming Engines, Textron Systems Corporation, and Textron, Inc. have joined the motion.

The power of Congress to preempt state law derives from the Supremacy Clause of Article VI of the Constitution, which provides that "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. The Supreme Court has explained that "the purpose of Congress is the ultimate touchstone in every pre-emption case." Wyeth v. Levine, 555 U.S. 555, 565 (2009) (citations omitted). There are three types of preemption: express preemption, conflict preemption, and field preemption. Express preemption is "explicitly stated in the statute's language." Gade v. National Solid Wastes Management Ass'n, 505 U.S. 88, 98 (1992) (citations and internal quotations omitted). Conflict preemption and field

---

2. Defendants incorrectly denominate their motion as a motion to dismiss under Rule 12(c) of the Federal Rules of Civil Procedure.

preemption are the two recognized types of implied preemption.
Id.  For conflict preemption, "compliance with both federal and
state regulations is a physical impossibility."  Id. (citations
omitted).

The defendants rely on field preemption, for which
either the scheme of federal regulation must be "so pervasive as
to make reasonable the inference that Congress left no room for
the States to supplement it" or state law must "stand[] as an
obstacle to the accomplishment and execution of the full purposes
and objectives of Congress."  Wyeth, 555 U.S. at 565 (citations
omitted).

In all preemption cases, particularly in those in which
Congress has legislated in a field which the States have
traditionally occupied, courts must "start with the assumption
that the historic police powers of the States were not to be
superseded by the Federal Act unless that was the clear and
manifest purpose of Congress."  Wyeth, 555 U.S. at 565 (citations
omitted).  The Supreme Court has explained that "despite the
variety of these opportunities for federal preeminence, we have
never assumed lightly that Congress has derogated state
regulation, but instead have addressed claims of pre-emption with
the starting presumption that Congress does not intend to
supplant state law."  New York State Conf. of Blue Cross & Blue
Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654 (1995).

The mere existence of a detailed federal regulatory or
enforcement scheme does not alone imply preemption.  English v.

<u>Gen. Elec. Co.</u>, 496 U.S. 72, 87 (1990).  The Supreme Court has stated:

> To infer pre-emption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive.  Such a rule, of course, would be inconsistent with the federal-state balance embodied in our Supremacy Clause jurisprudence.

<u>Hillsborough Cnty. v. Automated Med. Labs., Inc.</u>, 471 U.S. 707, 717 (1985).

The Federal Aviation Act of 1958 (the "Act"), 49 U.S.C. § 40101 et seq., on which defendants rely for preemption, was enacted in response to a series of "fatal air crashes between civil and military aircraft operating under separate flight rules."  <u>Abdullah v. American Airlines</u>, 181 F.3d 363, 368 (3d Cir. 1999) (citations omitted).  It replaced the Civil Aeronautics Act of 1938, 52 Stat. 973 (1938).  Congress intended "to promote safety in aviation and thereby protect the lives of persons who travel on board aircraft."  <u>Abdullah</u>, 181 F.3d at 368 (citations omitted).  In the Act, Congress gave the Administrator of the Federal Aviation Administration ("Administrator") the authority and the duty to "promote safe flight of civil aircraft," including the duty to prescribe "minimum standards required in the interest of safety for appliances and for the design, material, construction, quality of work, and performance of aircraft, aircraft engines, and propellers."  49 U.S.C. § 44701(a)(1).

-4-

Congress created an inspection and certification system which enables the Administrator to enforce federal aircraft design standards.  When the Administrator is satisfied, after investigation, that a proposed "aircraft, aircraft engine, propeller, or appliance is properly designed and manufactured, performs properly, and meets the regulations and minimum standards prescribed," the Administrator may issue a "type certificate."  49 U.S.C. § 44704(a)(1).  When the Administrator finds that duplicates of a type certified aircraft will be produced in conformity with the type certificate, he may issue a "production certificate."  49 U.S.C. § 44704(c).

A person may not operate an aircraft without an "airworthiness certificate" in effect.  49 U.S.C. § 44711(a)(1).  The Administrator issues an "airworthiness certificate" only if he "finds that the aircraft conforms to its type certificate and, after inspection, is in condition for safe operation..."  49 U.S.C. § 44704(d)(1).  The Administrator may reinspect at any time an aircraft or engine given a certificate under the Act and may modify, suspend, or revoke the certificates after such an inspection if he finds it necessary for the public interest.  49 U.S.C. § 44709.

In Burbank v. Lockheed Air Terminal, Inc., which held that there was federal preemption of laws involving aircraft noise due to the "pervasive nature of the scheme of federal regulation of aircraft noise," the Supreme Court noted:

> Federal control is intensive and exclusive.
> Planes do not wander about in the sky like
> vagrant clouds. They move only by federal
> permission, subject to federal inspection, in
> the hands of federally certified personnel
> and under an intricate system of federal
> commands. The moment a ship taxis onto a
> runway it is caught up in an elaborate and
> detailed system of controls.

411 U.S. 624, 633-34 (1973) (quoting Northwest Airlines v. Minnesota, 322 U.S. 292, 303 (1944) (Jackson, J., concurring)).

As originally enacted, the Act contained no provision expressly addressing federal preemption of state efforts to regulate civil aviation. In the Airline Deregulation Act of 1978 ("ADA"), Congress added an explicit preemption provision to the general provisions of the original Act. That section provides:

> Preemption of authority over prices, routes, and service
> ...
> (b) Preemption.--(1) Except [for certain Alaskan intrastate air transportation], a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation...

49 U.S.C. § 41713. The Act also contains a general "remedies" savings clause:

> A remedy under this [Act] is in addition to any other remedies provided by law.

49 U.S.C. § 40120(c).

Thereafter, Congress passed the General Aviation

Revitalization Act of 1994 ("GARA").[3]  It contains a statute of

repose which provides in relevant part:

> no civil action for damages for death or
> injury to persons ... arising out of an
> accident involving a general aviation
> aircraft may be brought against the
> manufacturer of the aircraft or the
> manufacturer of any new component, system,
> subassembly, or other part of the aircraft,
> in its capacity as a manufacturer if the
> accident occurred ... after the applicable
> limitation period....

See 49 U.S.C. § 40101 note, §2(a).  GARA provides that the

applicable limitation period is eighteen years.  Id.  It also

contains a section that reads:

> This section supersedes any State law to the
> extent that such law permits a civil action
> described in subsection (a) to be brought
> after the applicable limitation period for
> such civil action established by subsection
> (a).

See 49 U.S.C. § 40101 note, §2(d).  "Subsection (a)" refers to

the section quoted above, imposing the statute of repose.  Thus,

Congress has enacted express preemption solely to prohibit state

law actions against aircraft or aircraft component manufacturers

brought after eighteen years.

The legislative history of GARA, as delineated in the

House Report, is consistent with the limited nature of the

preemption with respect to aircraft design and manufacturing

claims:

---

3.   Pub. L. No. 103-298, 108 Stat. 1552 (1994), amended by Act
of Pub. L. No. 105-102, § 3(e), 111 Stat. 2204, 2216 (1997).

While the specific contours have ebbed and
flowed, the public's right to sue for damages
is ultimately grounded in the experiences of
the legal system and values of the citizens
of a particular State.
It has also been noted that attempts to
preempt State tort law can create procedural
and jurisdictional confusion:

> Federal standards [which preempt
> State tort law], however
> well-crafted, will be applied in
> many different contexts and ***
> will inevitably be construed and
> applied differently, not only by
> State supreme courts but by the 13
> federal Circuit Courts of Appeals.
> With each State starting anew such
> uniformity as we have achieved to
> date will be destroyed and the long
> process of interpretation to
> unravel new concepts will begin.

For all of the foregoing reasons Congress has
chosen to tread very carefully when
considering proposals such as S. 1458 that
would preempt State liability law.
...
Based on the hearing record, the Committee
voted to permit, in this exceptional
instance, a very limited Federal preemption
of State law.
...
Given the conjunction of all these
exceptional considerations, the Committee was
willing to take the unusual step to
preempting State law in this one extremely
limited instance.  The legislation attempts
to strike a fair balance by providing some
certainty to manufacturers, which will spur
the development of new jobs, while preserving
victims' right to bring suit for compensation
in certain particularly compelling
circumstances.
...
Under the legislation, victims would also
continue to be free to bring suit against
pilots, mechanics, base operators, and other
responsible parties where their negligence or
other misconduct is a proximate cause of the
accident.  And in cases where the statute of
repose has not expired, State law will

> continue to govern fully, unfettered by
> Federal interference.

H.R. Rep. No. 103-525(II) (1994), reprinted in 1994 U.S.C.C.A.N.
1644 (quoting Hon. Harry L. Carrico, Chief Justice of the Supreme
Court of Virginia, at Hearings before the House Comm. on Energy
and Commerce, Subcomm. on Commerce, Consumer Protection, and
Competitiveness, 100th Cong., 1st Sess. 29 (May 5, 1987))
(emphasis added).

Our Court of Appeals addressed the issue of whether
federal law preempted the state standards of care for air safety
in Abdullah, 181 F.3d at 364.  There, the plaintiffs alleged that
the pilot and flight crew were negligent in failing to take
precautions to avoid severely turbulent conditions or to warn the
passengers of those conditions.  Id. at 365.  A jury found for
plaintiffs and awarded more than $2,000,000 in damages.  Id.
Facing post-trial motions, the District Court of the Virgin
Islands certified for interlocutory review the issue of whether
federal law preempts state standards of care for air safety, and
the Court of Appeals agreed to decide the issue.  It held:

> We conclude, therefore, that because of the
> need for one, consistent means of regulating
> aviation safety, the standard applied in
> determining if there has been careless or
> reckless operation of an aircraft, should be
> federal; state or territorial regulation is
> preempted.

Id. at 372 (emphasis added).  The court in Abdullah based this
"careless or reckless" standard on one of the regulations
promulgated under the Act, which provides that "[n]o person may

-9-

operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."  14 C.F.R. § 91.13(a). The court additionally held that "despite federal preemption of the standards of care, state and territorial damage remedies still exist for violation of those standards."  Abdullah, 181 F.3d at 365.  The first holding is the one relevant to this case since the defendants are not contending that state damages remedies are preempted.

We acknowledge that Abdullah contains language broader than its holding.  For example, our Court of Appeals wrote:

> Because the legislative history of the FAA
> and its judicial interpretation indicate that
> Congress's intent was to federally regulate
> aviation safety, we find that any state or
> territorial standards of care relating to
> aviation safety are federally preempted.  Our
> analysis is sustained by reference to the
> broad scope of the FAA....  It also is
> supported by decisions in which courts found
> federal preemption of discrete, safety-
> related matters, such as airspace management,
> flight operations, and aviation noise.

Id. at 371 (citations omitted).  It also concluded, "contrary to courts that have found that federal law does not preempt state and territorial air safety standards, or that federal law only preempted discrete aspects thereof, we find implied federal preemption of the entire field of aviation safety."  Abdullah, 181 F.3d at 365.

Some district courts in our circuit have interpreted the expansive language of Abdullah as a holding and thus binding on the district courts in this circuit.  See Pease v. Lycoming

Engines, No. 4:10-CV-00843, 2011 U.S. Dist. LEXIS 145344, at *34
(M.D. Pa. Dec. 19, 2011); Sikkelee v. Precision Airmotive Corp.,
731 F. Supp. 2d 429, 435 (M.D. Pa. 2010); Landis v. US Airways,
Inc., No. 07-1216, 2008 U.S. Dist. LEXIS 21300, at *5 (W.D. Pa.
Mar. 18, 2008); Duvall v. Avco Corp., No. 4:CV 05-1786, 2006 U.S.
Dist. LEXIS 31445, at *8 (M.D. Pa. May 19, 2006).  In these
cases, the courts determined that Abdullah held that federal law
preempted all state and territorial standards of care relating to
aviation safety, not only cases involving aircraft operations.
These courts reasoned that, as a result, state law products
liability claims were also preempted by federal law.

          This expansive language of Abdullah was dicta, not the
holding of the case.  "Dicta are 'judicial comment[s] made while
delivering a judicial opinion, but one[s] that [are] unnecessary
to the decision in the case and therefore not precedential....'"
United States v. Dupree, 617 F.3d 724, 740 (3d Cir. Pa. 2010)
(quoting Black's Law Dictionary 1177 (9th ed. 2009)) (citing
Connecticut v. Doehr, 501 U.S. 1, 30 (1991) (Rehnquist, C.J.,
concurring)).  The issue of whether the Act preempts state
products liability law was not before the court in Abdullah.
Although we carefully take into account the full scope of the
opinion in Abdullah, its holding applies only to "careless or
reckless operation of an aircraft," and its dicta is without any
discussion or even mention of the express but limited preemption
of GARA.

Our Court of Appeals again considered the issue of the Act's preemption of state law claims in Elassaad v. Independence Air, Inc., 613 F.3d 119 (3d Cir. 2010). There, the plaintiff, who was disabled, sued for injuries he sustained disembarking from an airplane after it had arrived at the gate at the Philadelphia International Airport. Elassaad claimed that the defendant was negligent in "(1) operating an aircraft made defective by design features of the aircraft steps; (2) failing to inspect and maintain the steps; and (3) failing to offer and render personal assistance to Elassaad as he disembarked from the jet." Id. at 122. The defendant moved for summary judgment on the ground that federal regulations addressing air carriers' conduct toward the disabled preempted state law negligence standards.

In Elassaad, our Court of Appeals summarized Abdullah, including its broad language, but held that the Act did not preempt Elassaad's state law claims. Id. at 125-27, 133. It reasoned that the analysis of field preemption in Abdullah was in the context of in-air safety within the field of aviation safety. Id. at 126. It determined, accordingly, that "[t]he supervision of the disembarkation process by a flight crew therefore falls outside the bounds of what we were considering in Abdullah." Id. at 127. The court therefore performed a separate analysis of whether federal law preempted Elassaad's claims and concluded that "[t]he statutory and regulatory framework of the [] Act thus provides no evidence of any intent--much less a 'clear and

-12-

manifest' intent--to regulate safety during disembarkation."  Id.
at 127-31.

        The claims before us are simply outside the bounds of
both Abdullah and Elassaad.  Neither case addressed whether
federal law preempts the standard of care in actions involving
the design or manufacture of aircraft or aircraft components.
Our decision not to veer beyond the holdings in Abdullah and
Elassaad is guided by the words of GARA, which neither case
discussed or had a need to discuss.  GARA imposed express
preemption in terms of an eighteen year statute of repose.  It is
not possible in our view to read GARA in a way consistent with
field preemption by federal law in the aircraft products
liability context as espoused by the defendants.  If Congress
intended field preemption, there would have been no reason for it
to enact a narrow express preemption provision in the nature of a
statute of repose.  The absence of field preemption, as noted
above, is buttressed by GARA's legislative history.  The House
Report states explicitly, "Based on the hearing record, the
Committee voted to permit, in this exceptional instance, a very
limited Federal preemption of State law....  And in cases where
the statute of repose has not expired, State law will continue to
govern fully, unfettered by Federal interference."  H.R. Rep. No.
103-525(II) (1994), reprinted in 1994 U.S.C.C.A.N. 1644.

        In addition, state products liability law is not an
obstacle to executing the full goals of Congress.  The Act

directs the Secretary of Transportation to consider the following in carrying out its objections:

> preventing deterioration in established safety procedures, recognizing the clear intent, encouragement, and dedication of Congress to further the highest degree of safety in air transportation and air commerce, and to maintain the safety vigilance that has evolved in air transportation and air commerce and has come to be expected by the traveling and shipping public.

49 U.S.C. § 40101(a)(3). State products liability, negligence and breach of warranty claims for aircraft design or manufacture will only help, not harm, Congress in obtaining its goal of maximum safety. Cleveland v. Piper Aircraft Corp., 985 F.2d 1438, 1443 (10th Cir. 1993).

Moreover, state products liability law is not inconsistent with the scheme of aviation regulation under the circumstances posited here. Although there are federal regulations addressing fuel delivery systems generally, no standard specifically addresses the design and manufacture of the fuel servo at issue in this action. See, e.g., 14 C.F.R. §§ 27.955, 27.961, 27.997, 33.35. This is in contrast to Abdullah where 14 C.F.R. § 91.13(a) supplied the "careless or reckless" standard used for airplane operations.

In any analysis, we must always keep in mind the caution expressed by the Supreme Court about field preemption. Simply because Congress has enacted comprehensive legislation does not mean that field preemption should supersede state law,

particularly in a field such as that here which the states have traditionally occupied.  <u>Wyeth</u>, 555 U.S. at 565; <u>Hillsborough Cnty.</u>, 471 U.S. at 717.  For example, federal regulation of prescription drugs is pervasive, yet the Supreme Court has allowed state law claims to continue "as a complementary form of drug regulation."  <u>Wyeth</u>, 555 U.S. at 578.  Ultimately, preemption is a matter of congressional intent.  <u>Id.</u> at 565. There is no evidence that it was the "clear and manifest purpose of Congress" for the Act to supersede state products liability, negligence, or breach of warranty law as applied to aircraft design and manufacture.  <u>Id.</u>  The passage of GARA and its legislative history are strong proof to the contrary.

Accordingly, we will deny the motion of defendants Schweizer Aircraft Corporation, Schweizer Holdings, Inc., Sikorsky Aircraft Corporation, and United Technologies Corporation for judgment on the pleadings on the ground of federal preemption.