IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PAMELA LEWIS, et al.            :          CIVIL ACTION
                                :
         v.                     :
                                :
LYCOMING, et al.                :          NO. 11-6475

                              MEMORANDUM

Bartle, J.                                            May 29, 2015

      Pamela Margaret Lewis, individually and as personal representative of the estate of Steven Edward Lewis, and Keith Whitehead and John Joseph Wroblewski as co-personal representatives of the estate of Philip Charles Gray (collectively "plaintiffs") have brought this diversity action against defendants Avco Corporation and Lycoming Engines (collectively "Avco") as well as against Schweizer Aircraft Corporation.[1]  The lawsuit arises out of a helicopter crash that occurred on September 22, 2009 near Blackpool in Lancashire, England.  Lewis and Gray were both killed in the incident.  The complaint, which was originally filed in the Court of Common Pleas of Philadelphia County and removed here, contains claims for damages on theories of product liability, negligence, breach of warranty, and concert of action.

      Before the court is the motion of Avco for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

---

[1] Plaintiffs additionally brought suit against Textron, Inc., Textron Systems Corporation, Precision Airmotive LLC, Precision Airmotive Corporation, Schweizer Holdings, Inc., Sikorsky Aircraft Corporation, United Technologies Corporation, and Champion Aerospace LLC.  These defendants have been dismissed.

Avco also moves to strike as untimely the supplemental affidavits of two of plaintiffs' experts, Arthur "Lee" Coffman and Mark Seader.

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rule 56(c) states:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or ... showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the plaintiffs. Id. at 252. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the factfinder could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

-2-

When ruling on a motion for summary judgment, we may only rely on admissible evidence. See, e.g., Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999). We view the facts and draw all inferences in favor of the nonmoving party. In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004). However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

II.

For present purposes we accept the relevant facts in the light most favorable to plaintiffs. On September 22, 2009, Gray participated in a training flight as a student of Lewis, a certified flight instructor. Gray and Lewis were British citizens and residents of the United Kingdom, as are the plaintiffs in this action. Gray was practicing autorotation maneuvers under Lewis's instruction on the day in question.[2]

During the flight Lewis issued a mayday call over the radio, which transmission included the word, "failure." A low-R.P.M. warning tone could be heard in the final radio transmission, indicating that the helicopter's main rotor blade had ceased to

---

[2] According to plaintiff's pilot expert, autorotation is a technique by which a pilot safely lands a helicopter that has lost engine power by using wind, altitude, and the preserved kinetic energy in the main rotor to achieve a decreased rate of descent.

-3-

rotate at a safe speed.  Witnesses also reported seeing black smoke coming from the helicopter's exhaust and hearing a "popping" sound coming from the aircraft.  Not long after the final radio transmission, the aircraft was discovered wrecked in a grassy field near the River Wyre and north of the Blackpool Airport from which it had taken off.  Both occupants died.

The helicopter at issue was a Schweizer 269C, registration number G-LINX.  It was manufactured in 2006 by Schweizer Aircraft Corporation in New York and owned by Heli-Lynx, Ltd., a company located in Cumbria, England.  The helicopter had accumulated 307 flight hours at the time of the accident.  Lycoming Engines, which is located in Williamsport, Pennsylvania, designed, manufactured, and sold the HIO-360-G1A piston-driven engine that was installed in the aircraft.

The engine contained a RSA-5AD1 fuel servo manufactured by Precision Airmotive, LLC ("Precision").  A fuel servo is a device that regulates the fuel-air mixture delivered to the engine's cylinders for combustion.  Lycoming Engines closely coordinated with Precision in the design, testing, and modification of the servo.  Plaintiffs have asserted that the servo was defective, and its design and functioning have become principal issues in this litigation.

III.

According to Avco, plaintiffs have failed to meet their burden of proving that the fuel servo was defectively designed. When Avco filed its original motion, its position was based on the principles of the new Restatement (Third) of Torts: Products Liability, which our Court of Appeals had predicted Pennsylvania would now adopt in place of the Restatement (Second) of Torts. See Berrier v. Simplicity Mfg., 563 F.3d 38, 40 (3d Cir. 2009).[3] Nonetheless, we stayed any ruling on the motion pending the decision of the Supreme Court of Pennsylvania in Tincher v. Omega Flex, Inc., 64 A.3d 626 (Pa. 2013), where the Court had before it the question of whether to endorse the new Restatement. On November 19, 2014 the Court handed down its decision, and we allowed the parties supplemental briefing on December 5, 2014. Tincher v. Omega Flex, Inc., 104 A.3d 328 (Pa. 2014).

The Supreme Court of Pennsylvania declined to adopt the Restatement (Third), contrary to the prediction of our Court of Appeals. Id. at 335. The Court held that in Pennsylvania:

> [A] plaintiff pursuing a cause upon a theory of strict liability in tort must prove that the product is in a "defective condition." The plaintiff may prove defective condition by showing either that (1) the danger is unknowable and unacceptable to the average or

---

[3] Under the Restatement (Third), a plaintiff alleging defective design must demonstrate that a reasonable alternative design would have reduced or avoided the risk of harm. Restatement (Third) of Torts: Products Liability § 2.

-5-

>     ordinary consumer, or that (2) a reasonable
>     person would conclude that the probability and
>     seriousness of harm caused by the product
>     outweigh the burden or costs of taking
>     precautions. The burden of production and
>     persuasion is by a preponderance of the
>     evidence.

Id. It is the plaintiff's prerogative to decide at the outset whether to articulate the claim using consumer expectations, a risk-utility analysis, or both. Id. at 406.

Under the consumer expectations test, "the product is in a defective condition if the danger is unknowable and unacceptable to the average or ordinary consumer." Id. at 387. In contrast, a risk-utility analysis involves a balancing of the dangers of a product against the ease with which those dangers might be mitigated. Id. at 389. In describing the risk-utility test, the Court noted that other jurisdictions have relied upon a series of factors articulated by Dean John W. Wade. Id. These "Wade factors" are:

>     (1) The usefulness and desirability of
>     the product -- its utility to the user and to
>     the public as a whole.
>     (2) The safety aspects of the product --
>     the likelihood that it will cause injury, and
>     the probable seriousness of the injury.
>     (3) The availability of a substitute
>     product which would meet the same need and not
>     be as unsafe.
>     (4) The manufacturer's ability to
>     eliminate the unsafe character of the product
>     without impairing its usefulness or making it
>     too expensive to maintain its utility.
>     (5) The user's ability to avoid danger by
>     the exercise of care in the use of the product.

(6) The user's anticipated awareness of the dangers inherent in the product and their availability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
(7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

Id. at 389-90.

The Supreme Court of Pennsylvania stopped short of endorsing the Wade factors expressly. It explained that "these considerations may provide a holistic perspective on a manufacturer's choice to bring a product to market, [but] they may not be immediately responsive in the (typical) case implicating allegations relating to a particular design feature." Id. at 390. The Court noted that the formula described by Judge Learned Hand -- which simply balances the probability of harm, the magnitude of the resulting damage, and the burden of providing adequate precautions -- could be a better means of presenting a risk-utility case to the jury than the multiple factors set forth by Dean Wade. Id.; United States v. Carroll Towing Co., 159 F.2d 169, 173 (2d Cir. 1947).

The Court also underlined that it is ordinarily for the jury to determine whether a product is in a defective condition. Id. at 335. Indeed, it overruled the holding in Azzarrello v. Black Bros. Co., 391 A.2d 1020 (Pa. 1978), that it is a question of law whether a product is in a defective condition. Tincher, 104 A.3d at 367, 376. In so doing, the Court explained that "[w]hether a

-7-

product is in a defective condition is a question of fact ordinarily submitted for determination to the finder of fact; the question is removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue." Id. at 335.

In the present matter, Avco now maintains that plaintiffs have failed to meet their burden of proof under either the consumer expectations test or a risk-utility analysis. A reasonable pilot, according to Avco, anticipates and prepares for the loss of engine power such as that which purportedly occurred here by becoming proficient in the autorotation maneuvers that the decedents were practicing on the day of the crash. Avco further urges that plaintiffs have failed to discuss all of the Wade factors enumerated above.

Plaintiffs respond that a reasonable consumer would not expect a helicopter engine to lose power midflight simply because he or she trains for such an emergency. This is doubly so, plaintiffs note, when the engine is nearly brand new as it was here. Plaintiffs also argue that the Wade factors, to the extent they are the law in Pennsylvania, are non-dispositive factors and need not be addressed comprehensively to survive summary judgment.

Having reviewed the record and the arguments of the parties, we conclude that summary judgment is inappropriate at this stage. As noted above, the determination of strict liability is properly taken away from the jury "only where it is clear that

reasonable minds could not differ on the issue." Tincher, 104 A.3d at 335.  There is ample room in the present record for the jury to decide what balance of risk and utility or what consumer expectations are appropriate with respect to the fuel servo.  It is therefore for the jury to determine at trial whether the servo was in a defective condition at the time of the crash.  The motion of Avco for summary judgment will be denied on the ground that genuine disputes of material fact exist.

IV.

We still have before us the motion of Avco to strike as untimely the supplemental expert affidavits of Arthur "Lee" Coffman and Mark Seader, who are plaintiffs' aircraft engine experts.  Plaintiffs submitted these supplemental reports on July 2, 2014.  This was over three months after the deadline we imposed for the submission of expert reports.  See Second Scheduling Order dated March 31, 2014 (Doc. # 177).

Avoc specifically challenges the opinions of the experts in their affidavits that a certain alternative fuel servo design was available from at least the late 1970s.  Plaintiffs urge that the affidavits merely elaborate on the previously-disclosed opinions of Coffman and Seader.  But these experts had not previously offered any conclusions as to when an alternative servo design was available.  New or contradictory opinions are not proper subject matter for supplemental disclosures.  See Pritchard v. Dow Agro

Scis., 263 F.R.D. 277, 284-85 (W.D. Pa. 2009). Furthermore, given that the burden of proof rests with plaintiffs, there is no basis for their argument that Avco is responsible for the late disclosure because it failed to ask appropriate questions during the depositions of these experts.

Accordingly, the motion to strike will be granted.